## NATIONAL HEELING–MACH. CO. et al. v. ABBOTT.

(Circuit Court, D. Massachusetts.    October 10, 1895.)

### No. 495.

1. PATENTS—ASSIGNMENT IN TRUST—ESTOPPEL.
   Where an assignment of a patent purports to be in trust, but the trust is not declared on the face of the instrument, the assignor is bound in equity (on account of the difficulties and hazards of persons dealing with the trustee, in ascertaining his powers), to act in good faith, so as to prevent strangers from being prejudiced by his acquiescence, and an estoppel easily arises against him.

2. SAME—ASSIGNMENT SIGNED IN BLANK—ESTOPPEL.
   If the owner of a patent signs in blank a paper which he knows is to be filled out by his attorney with matter relating to his patent, and the attorney, contrary to his intention, inserts an assignment of the whole patent to himself, in trust, the owner is estopped, so far as concerns innocent strangers acquiring licenses from him, to deny his right to fill out the assignment as was actually done.

3. SAME—SUCCESSIVE LICENSES.
   Where a license given under a patent was, by its terms, exclusive, and contained a provision that the granting of a new license to another should operate as a cancellation of it, and afterwards the same was surrendered, and new licenses in the same terms issued in succession to other parties, held, that the last licensee stood in the same position as if, instead of successive licenses, there had been an assignment of the original license with the assent of the owner of the patent, and was entitled to all the rights and equities possessed by any of his predecessors.

4. SAME—ESTOPPEL.
   Neglect for 13 years by patent owners, who have assigned their patent in trust, to inquire into the terms of licenses known to have been granted to third parties by their trustee, estops them to deny knowledge of the contents of such licenses.

This was a bill in equity by the National Heeling-Machine Company and the Ross Heel Company against William T. Abbott for alleged infringement of letters patent No. 220,920, issued October 28, 1879, to Henry A. Henderson and Hollis C. Paine, for an improvement in heel-trimming machines.    An injunction pendente lite was granted February 2, 1895.    The cause is now before the court on final hearing.

John Lowell and Clarke & Raymond, for complainants.
Lund, Davis & Welch, for defendant.

PUTNAM, Circuit Judge.    Theoretically, the granting of an interlocutory injunction in a cause in equity does not prejudice a hearing on bill, answer, and proofs; but it is not always certain that a court which has heard preliminary motions on a hasty, and perhaps partial, grouping of the facts, can, when it comes to the final disposition of the suit, erase the impressions previously gathered.    The

court has endeavored to do so here, and has carefully examined the record as presented on final hearing, with a view of disposing of the case anew, yet its conclusions are practically the same as they were when it granted the interlocutory injunction.

The patent involved in this case is described as for an improvement in heel-trimming machines, and was issued in 1879 to Henderson and Paine. The original purpose of the patentees was the trimming of wooden heels, but, soon after the patent was issued, it was discovered that it could be used in connection with finishing leather heels. It is said that the machine patented required some modification for the latter purpose; but whether this was so, or not, the court does not find it necessary to determine. The plaintiffs in this case are the National Heeling-Machine Company and the Ross Heel Company, each a corporation, and the defendant is William T. Abbott. The issue is entirely between the Ross Heel Company and Abbott, each claiming to be licensees of the original patentees; and no questions touching the validity of the patent, or infringement, arise. The Ross Heel Company claims an exclusive license so far as the machine can be used for the purpose of finishing wooden heels, and only to that extent. The patent-office records show an assignment of the entire patent to F. F. Raymond, 2d, as trustee, and a later one from him to the National Heeling-Machine Company. If the Ross Heel Company is the holder of an exclusive intervening license, as claimed by it, it, of course, had a right to bring this bill, making the assignee of the patent a party. But no question as to parties is made in the case, except so far as it is necessarily involved in the main issue which we are to consider. The assignment to Raymond describes him as trustee, without indicating on its face who are the beneficiaries under the trust. Probably, under Railroad Co. v. Durant, 95 U. S. 576, 579, and National Bank v. Insurance Co., 104 U. S. 54, 63, adopting the rule of Shaw v. Spencer, 100 Mass. 382, the obligation rested on any person taking a title from Raymond to ascertain the nature of the trust, and his right to make a title. On the other hand, in cases where the trust is not declared on the face of the instrument, on account of the difficulties and hazards which fall on persons dealing with the trustee, in ascertaining what are his powers, and even who are the beneficiaries, equity casts on such beneficiaries, when, as in this case, they create the trust, the duty of acting in good faith, so as to prevent strangers from being prejudiced by their acquiescence, and an estoppel easily arises against them.

It is claimed by the defendant that the Ross Heel Company, which holds under Raymond, through intervening licenses, is not an innocent licensee, and that when it took its license it had knowledge of the alleged existing relations between Raymond, as trustee, and Henderson and Paine; but it is clear that its predecessor in title was wholly innocent, and that, whatever knowledge the Ross Heel Company might have had or could have acquired, it is, under the circumstances, entitled to all the equities possessed by that predecessor.

It appears that Raymond was the attorney of Henderson and Paine with reference to this patent, which is an important fact. It does not appear that he was ever discharged by them, as such attorney,

until after the rights of the predecessors in title of the Ross Heel Company were fixed. It is claimed by the defendant, and testified by Henderson and Paine, that they were not aware they had made a general assignment of the patent to Raymond, as trustee; that they did not intend to do so; and that whatever they did execute was in blank, and was filled out by him contrary to their directions. But, even if they signed the instrument in blank, they knew it related to this patent; so that, so far as the rights of innocent strangers are concerned, they are estopped from denying the right of Raymond to fill out the assignment as we find it. It is also claimed that Henderson and Paine intended, in the transactions with Raymond, to reserve absolutely the control of the machine for use in trimming wooden heels, and that in that respect the instrument found in the record did not conform to their intention. But, simultaneously with the delivery of the assignment, Raymond, as trustee, executed a license to Henderson and Paine, giving them an exclusive right to the machine for trimming wooden heels; so that, so far as this case is concerned, the arrangement was completed substantially the same as they claim it should have been. There were some limitations in the license of which they complain, which, under some circumstances, might or might not have been of importance; but they are inconsequential here, as we view the facts. The license to Henderson and Paine bears the signature, not only of Raymond as trustee, but also of Henderson and Paine. One of them positively denies that he ever signed such an instrument, and the other has no recollection of signing it; but the original is produced, the testimony of the attesting witness is given, and there is no doubt in the mind of the court of the authenticity of their signatures. This license, however, is not important, except that their signatures to it emphatically deny their claim that they were ignorant that the patent had been generally assigned to Raymond. The license provided that on the application of Henderson and Paine a new license should be granted to any one elected by them. It also contained a provision that the new license should cancel it. Henderson and Paine deny that they ever had this license in their possession, and therefore deny that they ever surrendered it, and there is no formal instrument of surrender shown in the record. But this is unimportant, because, if any subsequent license was given by Raymond as trustee, with the consent of Henderson and Paine, or with their acquiescence, the license to them was of no further value, and was canceled in effect; for by force of its terms, which we have cited, the new license became a substitute for it.

April 24, 1880, Raymond, as trustee, gave a license to Blanchard, in the same terms as that previously given to Henderson and Paine, limited also to the manufacture of wooden heels. This not only contained the general expressions in the previous license, indicating that his right was exclusive, but also, to put this beyond question, there was inserted in it an express provision that Raymond would not license any other person to make wooden heels under the patent in question so long as Blanchard's remained in force. The same express provision was found in the subsequent licenses to which we will refer.

There is no doubt that Blanchard duly surrendered his license, and that September 25, 1886, Raymond issued to G. W. Harnden a new license, in all respects the same as that to Blanchard. Harnden subsequently surrendered this, and simultaneously, December 7, 1893, Raymond issued to the Ross Heel Company an exclusive license of like character in all respects. By the terms of these licenses to which we have already referred, the Ross Heel Company became the successor in title of Henderson and Paine, if a license was in fact issued to them, and, if not, of Blanchard; and the rights of the Ross Heel Company are precisely the same as though, instead of there being successive licenses, the original license had been transferred to that corporation, with the assents of the original licensee and of the general holder of the patent. In other words, the Ross Heel Company became the successor in title of Blanchard and Harnden, with all the rights and equities which either of them possessed. Henderson and Paine both deny knowledge of the issuing of the licenses to Blanchard and Harnden in the exclusive form in which they were in fact issued. The consequence was that April 25, 1893, Paine assigned to Henderson all his right, title, and interest in the patent, and May 23, 1893, Henderson licensed Abbott to make and use the patented machine for the purpose of trimming wooden heels only. Henderson's and Paine's denials are overborne by the weight of the direct testimony in the case,—four witnesses contradicting Henderson; and two, Paine. The testimony of each of these witnesses is altogether more satisfactory than that of either Henderson or Paine; but we need not dwell on this, as there are some elements in the case which put it beyond all question. They are the same referred to in our opinion filed February 2, 1895, disposing of the motion for an interlocutory injunction. Henderson admits that he knew Blanchard had a license of some kind, but he says he thought it was limited to the use of one or two specific machines. With reference to the Harnden license, the case is even more clear. This license contained a provision that on its surrender, and the issuing of a new license to Harnden's successor, Harnden should pay Raymond, as trustee, $250, which, of course, would inure to the benefit of Raymond's beneficiaries. Before this license issued, correspondence took place between Raymond and Henderson touching this $250, the record showing two letters from Raymond in Henderson's possession, or received by him. Therefore Henderson positively knew that a license to Harnden was in contemplation. Paine, it appears, had a letter from Raymond of December 5, 1882, in which these words occur: "You are shut off from making wood heels, because you have assigned the license." Paine immediately afterwards acknowledged this letter, and made no objection to the statement which we have quoted. Pending the period between the date of the license to Blanchard and that of Harnden's surrender of his license, Blanchard and Harnden relied on their title under Raymond, and were continuously using the patented machine. This covered 13 years. During this time neither Henderson nor Paine appears to have investigated the transactions, or to have notified Blanchard or Harnden that their title was not sufficient. If they knew the terms of the licenses, they were, of course, directly estopped by their acquiescence.

If they did not know them, they knew that licenses of some sort had been given by Raymond, who was their trustee and attorney; and, if they saw fit to make no inquiry, they became, on all principles of equity, equally estopped.   If, in 1893, they had brought a bill in equity to obtain the cancellation of the license held by Harnden, their bill would clearly have been defeated by their laches; and the equities against them when Henderson granted his license to Abbott, if they had then been put in the position of defendants by Harnden, were precisely the same as though they had brought a bill of the character supposed.   Abbott's equities are no greater than theirs. Let there be a decree in favor of the Ross Heel Company for an injunction and a master.